THE WEST SHORE RAILROAD COMPANY

*v.*

THE BERGEN TURNPIKE COMPANY.

[Submitted June 5th, 1901.    Decided July 6th, 1901.
Filed September 3d, 1901.]

Where a railroad company contracts with a turnpike company to construct and maintain a bridge for the use of the latter over the railroad right of way, and there is nothing to show that the parties contemplate other than a bridge for ordinary turnpike purposes, and such a bridge is built, the expense of reconstructing it to withstand the strain caused by an electric railway afterwards built by the turnpike company must be borne by the latter.

On motion for injunction.   On bill and affidavits.

*Mr. Albert C. Wall,* for the complainant.

*Mr. William D. Edwards,* for the defendant.

PITNEY, V. C.

The Bergen Turnpike Company is the owner of a turnpike running from Hoboken to Hackensack.   In the village of New

Durham, in Bergen county, it is crossed by the tracks of the complainant, the West Shore Railroad Company. The railroad tracks are laid at a grade about twenty feet below the level of the turnpike, and the turnpike travel is carried over the railroad by a bridge built by the predecessor of the complainant company, in pursuance of a written contract entered into between the parties on March 18th, 1881. By that contract the turnpike company agreed to convey to the railroad company a right of way across its road, the same being described in metes and bounds, for the consideration of $1,500 and a covenant on the part of the railroad company to erect and maintain a bridge over the railroad for the use of the turnpike company. The language is this:

"When said railway is completed across said lands the party of the second part agrees to erect and maintain a substantial permanent iron bridge over said railway, which bridge shall be of the full width of the turnpike, namely, sixty feet, and that it will not, during the construction of the same, interrupt public travel over the turnpike of the party of the first part for a greater length of time than twenty-four hours. The said bridge to have on each side of said turnpike a raised walk for foot passengers, of not less than six feet in width, and separated from the roadway for vehicles by proper curbs or guards. The said bridge to be closely boarded at each end upon the outside thereof, to a sufficient height to entirely exclude from sight locomotives approaching said bridge, and the retaining walls of the cut, on both sides of said bridge, to be surmounted by close board fences for the same purpose. And the said bridge and fences shall be maintained in good order by the party of the second part perpetually."

The railroad was constructed in an excavation as provided for in the agreement, and an iron bridge for the turnpike over the railroad was erected in accordance with the provisions above recited and in a manner and with a strength satisfactory to the turnpike company. It has so stood and been maintained ever since.

Now, the turnpike company proposes to install railroad tracks for a trolley line over its bed and across said bridge; and the affidavit of the engineer of the complainant is to the effect that the bridge, while it is sufficiently strong for all ordinary travel by vehicles and foot passengers, is not strong enough to sustain the increased weight due to tracks and trolley cars.

The object of the bill is to restrain the turnpike company from using the bridge for the purpose of its trolley road until it shall have reconstructed it with sufficient strength to maintain a trolley, or indemnify the complainant against any damage that may result from overloading the bridge.

The real question is, which of the parties shall incur the expense of rebuilding the bridge?

There is nothing to show that, at the time the bridge was built, it was in the contemplation of either of the parties that it was to be used for anything else than the then ordinary travel over a turnpike. It was designed and adapted for that purpose, and was accepted by the turnpike company as sufficiently strong.

Under these circumstances, it seems to me that the burden of increasing its strength is cast upon the turnpike company.

A learned argument was addressed to me to sustain the indisputable proposition that the laying of a trolley railroad over the highway was no additional burden upon the land. That proposition, however, has no application to the present case. There is no objection on the part of the railroad company to the laying of the trolley as such. The objection is the casting upon it the burden of rebuilding and maintaining a bridge of a more expensive character than that contemplated by the parties and practically agreed upon by them at the time of making the contract.

I think the injunction should go.